# EXHIBIT C

DO NOT DESTROY THIS NOTE: When paid, this note and the Deed of Trust must be surrendered to the trustee with request for reconveyance.

## STRAIGHT NOTE
(This Note Contains a "DUE-ON-SALE" Clause)

$1,000,000.00                    Healdsburg                              , California, November 20, 2007

On or before November 21            , 2008,

for value received, **Carl Wescott, a married man**

promises to pay to:
**David Kirk,** a married man                                                      , or order,

at **a place designated by payee**                                                           Dollars,

the sum of **One million and no/100** —————————————————————

with interest from   November 21        , 2007        until paid, at the rate of **12.00** per cent, per annum,

payable **at maturity.**

LATE CHARGE :        In the event any payment is received after Thirty (30) days from installment due date, Trustor will be charged Ten (10) percent of the payment.

Should interest not be so paid, it shall thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law. Should default be made in the payment of any installment of interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees. Principal and interest payable in lawful money of the United States of America. This note is secured by a certain DEED OF TRUST to FINANCIAL TITLE COMPANY, a California corporation, as TRUSTEE.

_____
Carl Wescott

snotedos (rev. 07/21/98)

# FINANCIAL TITLE COMPANY

November 21, 2007

David Kirk
855 Folsom Street, Apt. 734
San Francisco, CA 94107

Escrow No.: 10014305-663-Healdsburg, CA 95448
Loan No.:
Loan Amount: $1,000,000.00
Property Address: 4175 West Dry Creek Road
Healdsburg, CA 95448
Borrower: Carl Wescott

The above referenced escrow transaction is now completed. In accordance with the terms of your lender's instructions, enclosed herewith please find the following documentation:

- New Policy of Title Insurance: **TO FOLLOW**

- Original Note, executed by Carl Wescott, in the principal sum of $1,000,000.00, in favor of

    **David Kirk**

The original Deed of Trust will be forwarded to you under separate cover, directly from the County Recorder's Office. We cannot close this letter without expressing to you our sincere appreciation for your business.

Thank you,

Financial Title Company

*Nancy Clough*
Escrow Officer

Enclosure

U.S. Mail Certified/Return Receipt

---

235 Healdsburg Ave Ste 201    Healdsburg, CA 95448  •  (707) 431-9700  •  Fax (707) 431-0710

DO NOT DESTROY THIS NOTE: When paid, this note and the Deed of Trust must be surrendered to the trustee with request for reconveyance.

## STRAIGHT NOTE
(This Note Contains a "DUE-ON-SALE" Clause)

$1,000,000.00                    Healdsburg                              , California,    November 20, 2007

On or before                                        2008,

for value received, Carl Wescott, a married man

promises to pay to:

David Kirk,                                                                                               , or order,

at a place designated by payee

the sum of One million and no/100 ————————————————————————— Dollars,

with interest from                                    , 2007           until paid, at the rate of 12.00 per cent, per annum,

payable at maturity.

LATE CHARGE: _____ In the event any payment is received after Thirty (30) days from installment due date, Trustor will be charged Ten (10) percent of the payment.

Should interest not be so paid, it shall thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law. Should default be made in the payment of any installment of interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees. Principal and interest payable in lawful money of the United States of America. This note is secured by a certain DEED OF TRUST to FINANCIAL TITLE COMPANY, a California corporation, as TRUSTEE.

Carl Wescott

READ AND APPROVED
*[signature]*

sactrdss (rev. 07/21/09)

RECORDING REQUESTED BY
Financial Title Company
AND WHEN RECORDED MAIL TO

Name: David Kirk
Street Address: 855 Folsom Street, Apt. 734
City, State, Zip: San Francisco, CA 94107



2007124802
OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON
9 PGS

FINANCIAL TITLE CO.
11/21/2007 13:33 TED
RECORDING FEE: $38.00
PAID

1000.0

Order No. 10014305083

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN 090-100-027

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

(This Deed of Trust contains a "DUE-ON-SALE" clause)

This DEED OF TRUST, made November 20, 2007 between

Carl Wescott, a married man, herein called TRUSTOR,

whose address is 1083 Mississippi Street, San Francisco, CA 94107
(Number and Street)        (City)        (State)        (Zip)

Financial Title Company, a California Corporation, herein called TRUSTEE, and

David Kirk, a married man , herein called BENEFICIARY,

WITNESSETH: That Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property in the Unincorporated area, County of Sonoma, State of California, described as:

See Exhibit A attached hereto and made a part hereof.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at this option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note, evidencing the same, immediately due and payable.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $1,000,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

1stdstn(8/2003)

Case: 12-03058  Doc# 1-3  Filed: 04/20/12  Entered: 04/20/12 13:22:55  Page 5 of 20

A. To protect the security of this Deed of Trust, Trustor agrees:

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then hereunder. The recitals in such reconveyance of any matter or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

DofTr(8/2003)

Case: 12-03058    Doc# 1-3    Filed: 04/20/12    Entered: 04/20/12 13:22:55    Page 6 of 20

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgee, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

Dated: November 20, 2007

STATE OF CALIFORNIA  } S.S.
COUNTY OF San Francisco }

On November 20, 2007 before me, Bert Cherry, Notary Public

Notary Public, personally appeared

Carl Wescott

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Carl Wescott

(This area for official notarial seal)

BRET CHERRY

**REQUEST FOR FULL RECONVEYANCE**
**TO Financial Title Company, TRUSTEE:**

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated_____

_____
Signature must be notarized _____

Please mail Deed of Trust,
Note and Reconveyance to_____

STATE OF CALIFORNIA  } S.S.
COUNTY OF_____ }

On_____ before me,

_____
a Notary Public in and for said County and State, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature_____

(This area for official notarial seal)

**Do not lose or destroy this DEED OF TRUST or the NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.**

Dsl1a(ts001)

Exhibit A

All that certain real property situated in the Unincorporated Area, County of Sonoma, State of California, described as follows:

PARCEL ONE

THAT PORTION OF SECTIONS 10 AND 11, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT A FOUND 1/2" IRON PIPE TAGGED P.L.S. 3216 AT THE SOUTHEASTERLY CORNER OF SAID LAND OF KOPPALA; THENCE N 39° 51' 09" W ALONG THE SOUTHERLY LINE OF SAID LAND, 650.00 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE CONTINUING ALONG SAID SOUTHERLY LINE N 89° 31' 09" W 711.67 FEET TO A FOUND 1/2" IRON PIPE TAGGED L.S. 2869; THENCE CONTINUING ALONG SAID SOUTHERLY LINE, S 87° 30' 62" W 1713.60 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE CONTINUING ALONG SAID SOUTHERLY LINE, S 87° 30' 62" W 1713.60 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE CONTINUING N 40° 53' 16" E 85.99 THENCE N 40° 53' 16" E 467.27 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE CONTINUING N 40° 53' 16" E 85.99 FEET TO A POINT IN A PRIVATE ROAD ACROSS CRANE CREEK FROM WHICH A SET 1/2" IRON PIPE TAGGED P.L.S. 4207 BEARS N 75° 20' 16" W 80.98 FEET; THENCE N 81° 10' 28" E 78.57 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 81° 19' 29" E 168.01 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 7° 13' 11" E 289.28 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 35° 25' 49" E 600.00 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 89° 21' 17" E 390.17 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 88° 07' 50" E 149.24 FEET TO A FOUND 1/2" IRON PIPE TAGGED L.S. 2869; THENCE N 88° 07' 50" E 870.16 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 88° 07' 60" E 898.37 FEET TO A POINT ON THE EASTERLY LINE OF SAID LAND OF KOPPALA, DISTANT S 0° 48' 56" E 171.94 FEET FROM THE NORTHEASTERLY CORNER OF SAID LAND OF KOPPALA; THENCE S 0° 48' 56" E 1359.91 FEET TO THE POINT OF BEGINNING.

ALSO KNOWN AS LOT 3 AS SHOWN UPON THE RECORD OF SURVEY FILED NOVEMBER 30, 1998 IN BOOK 585 OF MAPS, PAGE 35, OFFICIAL RECORDS.

PARCEL TWO

AN EASEMENT FOR PRIVATE ROAD PURPOSES, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 40.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2869 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2869 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 68° 05' 29" W 1281.77 FEET; THENCE N 57° 59' 40" E 2029.28 FEET TO A SET 1/2" IRON PIPE TAGGED P.L.S. 4207; THENCE N 9° 10' 08" W 543.50 FEET TO THE NORTHERLY LINE OF SAID LAND OF KOPPALA, BEING THE CENTERLINE OF CHEMISE RIDGE ROAD AND THE TRUE POINT OF BEGINNING, FROM WHICH A SET 1/2" IRON PIPE TAGGED P.L.S. 4207 BEARS N 72° 14' 47" E 418.92 FEET; THENCE ALONG THE CENTERLINE OF AN EXISTING ROAD S 9° 00' 00" E 9.07 FEET; THENCE SOUTHEASTERLY ALONG A TANGENT CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 80.00 FEET THROUGH A CENTRAL ANGLE OF 73° 38' 02" AN ARC DISTANCE OF 77.08 FEET; THENCE S 85° 35' 02" E 84.67 FEET; THENCE S 74° 02' 03" E 61.61 FEET; THENCE S 61° 03' 52" E 53.09 FEET; THENCE S 42° 55' 32" E 61.37 FEET; THENCE S 31° 10' 29" E 40.18 FEET; THENCE S 44° 52' 20" E 76.01 FEET; THENCE SOUTHERLY ALONG A TANGENT CURVE CONCAVE WESTERLY HAVING A RADIUS OF 135.00 FEET THROUGH A CENTRAL ANGLE OF 118° 58' 08" AN ARC DISTANCE OF 280.12 FEET; THENCE S 74° 00' 37" W 128.06 FEET; THENCE S 48° 09' 53" W 61.18 FEET; THENCE WESTERLY ALONG A TANGENT CURVE CONCAVE NORTHERLY HAVING A RADIUS 145.00 FEET THROUGH A CENTRAL ANGLE OF 50° 25' 09" AN ARC DISTANCE OF 127.60 FEET TO A POINT WHICH BEARS S 48° 14' 57" W 45.95 FEET FROM A 1/2 IRON PIPE TAGGED PLS 4207; THENCE N 81° 24' 58" W 80.30 FEET; THENCE N 73° 34' 57" W 93.75 FEET; THENCE N 89° 49' 09" W 202.55 FEET; THENCE N 89° 38' 37" W 79.91 FEET; THENCE N 89° 49' 52" W 97.49 FEET; THENCE N 40° 14' 17" W 59.87 FEET; THENCE N 47° 04' 26" W 35.49 FEET; THENCE NORTHWESTERLY, WESTERLY AND SOUTHERLY ALONG A TANGENT CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 65.00 FEET THROUGH A CENTRAL ANGLE OF 146° 56' 15" AN ARC DISTANCE OF 166.95 FEET; THENCE S 16° 00' 40" E 38.83 FEET; THENCE S 24° 05' 36" E 36.86 FEET; THENCE SOUTHEASTERLY ALONG A TANGENT CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 180.00 FEET THROUGH A CENTRAL ANGLE OF 37° 10' 31" AN ARC DISTANCE OF 116.79 FEET; THENCE S 62° 06' 10" E 84.41 FEET; THENCE S 54° 29' 06" E 80.95 FEET; THENCE S 74° 58' 39" E 91.19 FEET; THENCE SOUTHEASTERLY ALONG A TANGENT CURVE CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 100.00 FEET THROUGH A CENTRAL ANGLE OF 36° 00' 14" AN ARC DISTANCE OF 62.84 FEET; THENCE S 38° 58' 26" E 22.86 FEET; THENCE SOUTHEASTERLY ALONG A TANGENT CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 370.00 FEET THROUGH A CENTRAL ANGLE OF 18° 37' 49" AN ARC DISTANCE OF 120.25 FEET; THENCE S 67° 35' 43" E 73.13 FEET; THENCE S 47° 16' 51" E 171.83 FEET; THENCE SOUTHEASTERLY, SOUTHERLY AND WESTERLY ALONG A TANGENT CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 45.00 FEET THROUGH A CENTRAL ANGLE OF 187° 34' 12"

AN ARC DISTANCE OF 123.76 FEET; THENCE N 69° 42' 35" W 62.68 FEET THENCE N 58° 42' 57" W 49.20 FEET; THENCE N 54° 18' 08" W 119.98 FEET; THENCE N 62° 58' 45" W 113.99 FEET; THENCE S 66° 44' 28" W 129.60 FEET; THENCE N 74° 15' 29" W 102.46 FEET; THENCE S 69° 39' 57" W 93.08 FEET; THENCE N 70° 38' 46" W 86.28 FEET; THENCE WESTERLY ALONG A TANGENT CURVE CONCAVE SOUTHERLY HAVING A RADIUS OF 220.00 FEET THROUGH A CENTRAL ANGLE OF 39° 56' 46" AN ARC DISTANCE OF 153.61 FEET; THENCE S 60° 22' 29" W 117.37 FEET; THENCE SOUTHWESTERLY, SOUTHERLY AND SOUTHEASTERLY ALONG A TANGENT CURVE CONCAVE WESTERLY HAVING A RADIUS OF 40.00 FEET, THROUGH A CENTRAL ANGLE OF 136° 47' 35" AN ARC DISTANCE 98.90 FEET, THENCE SOUTH 76° 25' 06" E 34.52 FEET; THENCE SOUTH 09° 23' 30" E 49.82 FEET; THENCE S 58° 57' 57" E 50.30 FEET; THENCE S 56° 24' 46" E 20.41 FEET; THENCE S 33° 30' 24" E 67.63 FEET; THENCE S 21° 08' 27" E 29.65 FEET; THENCE SOUTHERLY ALONG A TANGENT CURVE CONCAVE WESTERLY HAVING A RADIUS OF 220.00 FEET THROUGH A CENTRAL ANGLE OF 32° 57' 51" AN ARC DISTANCE OF 126.57 FEET; THENCE S 11° 49' 24" W 24.37 FEET; THENCE SOUTHERLY ALONG A TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF 100.00 FEET THROUGH A CENTRAL ANGLE OF 43° 52' 65" AN ARC DISTANCE OF 76.59 FEET; THENCE SOUTHERLY ALONG A TANGENT REVERSE CURVE CONCAVE WESTERLY HAVING A RADIUS OF 190.00 FEET THROUGH A CENTRAL ANGLE OF 22° 39' 25" AN ARC DISTANCE OF 75.13 FEET; THENCE S 0° 24' 06" E 75.40 FEET TO THE INTERSECTION OF SAID CENTERLINE WITH THE CENTERLINE OF CRANE CREEK, FROM WHICH A ½" IRON PIPE TAGGED PLS 4207 BEARS N 01° 19' 29" E 76.67 FEET, ALSO FROM WHICH A ½" IRON PIPE TAGGED PLS 4207 BEARS S 40° 53' 15" W 95.99 FEET AND ALSO FROM WHICH A ½" IRON PIPE TAGGED PLS 4207 BEARS N 75° 20' 15" W 30.68 FEET; THENCE CONTINUING ALONG SAID CENTERLINE S 7° 05' 44" E 24.00 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

EXCEPTING THEREFROM, THOSE PORTIONS LYING WITHIN PARCEL ONE.

## PARCEL THREE

AN EASEMENT FOR GENERAL ROAD AND UTILITY PURPOSES, OVER, UNDER, ACROSS A STRIP OF LAND OCCUPIED BY AN EXISTING ROAD, LYING ADJACENT TO AND NORTHERLY, WESTERLY AND NORTHEASTERLY OF A LINE TO BE DESCRIBED HEREINAFTER AS FOLLOWS:

COMMENCING AT A MOUND OF STONE IN AN EAST AND WEST FENCE LINE, SAID MOUND OF STONE BEING THE PERPETUATION OF THE SECTION CORNER 3-4-9-10, TOWNSHIP 9 NORTH, RANGE 10 WEST, M.D.M., SONOMA COUNTY, CALIFORNIA; THENCE SOUTH 89° 50' 18" EAST 2545.27 FEET TO A 1/2" GALVANIZED IRON PIPE, TAGGED LS 2969, THE 1/4 CORNER SECTION 9 AND 10, TOWNSHIP 9 NORTH, RANGE 10 WEST; THENCE SOUTH 2° 29' 03" WEST 460.46 FEET TO A 1/2" REINFORCING ROD, DRIVEN IN THE CENTER LINE OF THE EXISTING TRAVELED ROAD, TAGGED L2969, THE POINT OF BEGINNING OF THE LINE TO BE DESCRIBED; THENCE ALONG THE CENTER LINE OF THE EXISTING ROAD, THE FOLLOWING COURSES AND DISTANCES, UNTIL OTHERWISE STATED: SOUTH 87° 27' 45" EAST 119.69 FEET; THENCE SOUTH 86° 30' 40" EAST 176.47 FEET; THENCE NORTH 62° 09' 40" EAST 57.72 FEET; THENCE NORTH 22° 42' 00" EAST 39.61 FEET; THENCE NORTH 19° 50' 00" WEST 49.28 FEET; THENCE NORTH 40° 15' 15" WEST 51.01 FEET; THENCE NORTH 42° 31' 10" WEST 80.04 FEET; THENCE NORTH 3° 65' 10" EAST, 39.70 FEET; THENCE NORTH 59° 40' 00" EAST 34.60 FEET; THENCE SOUTH 84° 34' 30" EAST 61.40 FEET; THENCE SOUTH 72° 11' 40" EAST 248.44 FEET; THENCE SOUTH 65° 51' 15" EAST 281.41 FEET; THENCE SOUTH 72° 17' 46" EAST 230.70 FEET; THENCE SOUTH 81° 14' 00" EAST 179.97 FEET; THENCE SOUTH 72° 44' 06" EAST 220.22 FEET; THENCE SOUTH 58° 59' 20" EAST 194.62 FEET; THENCE SOUTH 70° 29' 15" EAST 79.93 FEET; THENCE SOUTH 80° 68' 15" EAST 56.67 FEET; THENCE SOUTH 89° 01' 10" EAST 101.47 FEET; THENCE NORTH 65° 02' 00" EAST 113.11 FEET; THENCE NORTH 76° 01' 45" EAST 70.20 FEET; THENCE NORTH 52° 18' 00" EAST, 126.86 FEET; THENCE NORTH 76° 40' 15" EAST 69.94 FEET; THENCE NORTH 79° 04' 10" EAST 62.79 FEET; THENCE NORTH 71° 24' 15" EAST 172.41 FEET; THENCE NORTH 86° 07' 09" EAST 199.40 FEET; THENCE SOUTH 80° 27' 15" EAST, 288.57 FEET; THENCE SOUTH 60° 04' 45" EAST 50.16 FEET; THENCE SOUTH 69° 02' 10" EAST 57.41 FEET; THENCE SOUTH 70° 02' 10" EAST 327.72 FEET; THENCE SOUTH 62° 03' 30" EAST 64.37 FEET; THENCE SOUTH 55° 25' 45" EAST 55.93 FEET; THENCE SOUTH 47° 54' 40" EAST 77.13 FEET; THENCE SOUTH 38° 49' 20" EAST 59.60 FEET; THENCE SOUTH 29° 36' 40" EAST 102.00 FEET; THENCE SOUTH 40° 38' 45" EAST 65.05 FEET; THENCE SOUTH 59° 49' 50" EAST 82.13 FEET; THENCE SOUTH 70° 01' 10" EAST 40.66 FEET; THENCE SOUTH 87° 51' 45" EAST 95.40 FEET; THENCE NORTH 79° 21' 10" EAST 20.24 FEET TO A ½" REINFORCING ROD, DRIVEN IN THE CENTER LINE OF THE EXISTING TRAVELED ROAD, TAGGED L2969 AND THE TERMINAL POINT OF THE LINE HEREIN DESCRIBED.

## PARCEL FOUR - A

AN EASEMENT FOR EXISTING POWERLINE PURPOSES BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129260 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2969 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2969 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 56° 05' 29" W 1261.77 FEET; THENCE N 87° 53' 40" E 1064.76 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING POLE LINE N 62°47'01" W 964.56 FEET; THENCE N 53° 04' 12" W 141.31 FEET;

THENCE N 33° 22' 41" W 110.23 FEET TO THE INTERSECTION OF SAID EXISTING POLE LINE WITH THE NORTHERLY LINE OF SAID PARCEL THREE AND THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHWESTERLY IN SAID NORTHERLY LINE OF SAID PARCEL THREE AND SOUTHEASTERLY IN LINE WHICH BEARS N 87° 53' 40" E AND S 87° 53' 40" W FROM THE TRUE POINT OF BEGINNING.

PARCEL FOUR – B

AN EASEMENT FOR EXISTING POWERLINE PURPOSES, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 88° 05' 28" W 1281.77 FEET; THENCE N 87° 53' 40" E 1084.78 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING POLE LINE S 52° 47' 01" E 703.03 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHWESTERLY IN LINE WHICH BEARS N 87° 53' 40" E AND S 87° 53' 40" W FROM THE TRUE POINT OF BEGINNING AND SOUTHEASTERLY IN A LINE WHICH BEARS N 39° 25' 49" E AND S 39° 25' 49" W FROM THE TERMINUS OF THE LINE DESCRIBED ABOVE.

PARCEL FIVE – A

AN EASEMENT FOR EXISTING TELEPHONE LINE PURPOSES BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 88° 05' 28" W 1281.77 FEET; THENCE N 87° 53' 40" E 1216.77 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING POLE LINE N 47° 32' 27" W 153.46 FEET; THENCE N 58° 57' 06" W 869.13 FEET; THENCE N 59° 05' 12" W 141.31 FEET; THENCE N 33° 22' 41" W 110.23 FEET TO THE INTERSECTION OF SAID EXISTING POLE LINE WITH THE NORTHERLY LINE OF SAID PARCEL THREE AND THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHWESTERLY IN SAID NORTHERLY LINE OF SAID PARCEL THREE AND SOUTHEASTERLY IN LINE WHICH BEARS N 87° 53' 40" E AND S 87° 53' 40" W FROM THE TRUE POINT OF BEGINNING.

PARCEL FIVE – B

AN EASEMENT FOR EXISTING TELEPHONE LINE PURPOSES BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2069 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 88° 05' 28" W 1281.77 FEET; THENCE N 87° 53' 40" E 1216.77 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING POLE LINE N 47° 32' 27" E 604.54 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHWESTERLY IN LINE WHICH BEARS N 87° 59' 40" E AND S 87° 59' 40" W FROM THE TRUE POINT OF BEGINNING AND SOUTHEASTERLY IN A LINE WHICH BEARS N 39° 25' 49" E AND S 39° 25' 49" W FROM THE TERMINUS OF THE LINE DESCRIBED ABOVE.

PARCEL SIX - A

EASEMENTS FOR WATERLINE PURPOSES, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

PARCEL ONE

A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND ½" IRON PIPE TAGGED L.S. 2969 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2969 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 88° 05' 28" W 1281.77 FEET; THENCE N 87° 53' 40" E 1222.62 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING WATERLINE N 50° 10' 05" W 36.73 FEET; THENCE N 35° 05' 27" W 269.20 FEET; THENCE N 40° 11' 43" W 20.76 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE SOUTHEASTERLY IN LINE WHICH BEARS N 87° 53' 40" E AND S 87° 59' 40" W FROM THE TRUE POINT OF BEGINNING.

PARCEL TWO

BEGINNING AT THE NORTHERLY TERMINUS OF THE COURSE DESCRIBED ABOVE AS N 40° 11' 43" W 20.76 FEET; THENCE N 49° 46' 17" E 32.27 FEET; THENCE N 40° 11' 43" W 100.00 FEET; THENCE S 49° 46' 17" W 100.00 FEET; THENCE S 40° 11' 43" E 100.00 FEET; THENCE N 49° 46' 17" E 32.73 FEET TO THE POINT OF BEGINNING.

PARCEL THREE

BEGINNING AT THE NORTHWESTERLY TERMINUS OF THE COURSE DESCRIBED IN PARCEL ONE ABOVE AS N 50° 10' 05" W 36.73 FEET; THENCE N 32° 52' 41" E 86.30 FEET TO THE CENTER OF AN EXISTING SPRINGWATER COLLECTION BOX; THENCE N 32° 52' 41" E 10.00 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

EXCEPTING THEREFROM THAT PORTION INCLUDED IN PARCEL ONE ABOVE.

PARCEL SIX - B

EASEMENTS FOR WATERLINE PURPOSES, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

PARCEL ONE

A STRIP OF LAND 20.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2969 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2969 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 88° 05' 28" W 1281.77 FEET; THENCE N 87° 53' 40" E 1632.49 FEET; THENCE N 2° 06' 20" W 478.83 FEET TO THE TRUE POINT OF BEGINNING; THENCE S 54° 68' 05" W 365.41 FEET TO THE NORTHERLY LINE OF A PRIVATE ROAD EASEMENT, 40.00 FEET WIDE, AND THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHEASTERLY IN THE LINE WHICH BEARS N 73° 00' 17" W AND S 73° 00' 17" E FROM THE TERMINUS DESCRIBED ABOVE.

PARCEL TWO

BEGINNING AT THE TRUE POINT OF BEGINNING DESCRIBED IN PARCEL ONE ABOVE; THENCE S 73° 00' 17" E 50.00 FEET; THENCE N 16° 59' 43" E 50.00 FEET; THENCE N 73° 00' 17" W 50.00 FEET; THENCE S 16° 59' 43" W 50.00 FEET; TO THE POINT OF BEGINNING.

PARCEL SIX-C

AN EASEMENT FOR WATERLINE PURPOSES, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF SECTION 10, TOWNSHIP 9 NORTH, RANGE 10 WEST, MOUNT DIABLO MERIDIAN, BEING A PORTION OF THE LAND DESCRIBED IN THE DEED TO GREGORY J. KOPPALA, RECORDED AS DOCUMENT NO. 1991-0129280 OF OFFICIAL RECORDS, SONOMA COUNTY RECORDS, THAT IS INCLUDED WITHIN A STRIP OF LAND 10.00 FEET WIDE, THE CENTERLINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT FOUND 1/2" IRON PIPE TAGGED L.S. 2989 AT THE SOUTHWESTERLY CORNER OF THE LAND DESCRIBED IN PARCEL THREE IN SAID DEED TO KOPPALA, FROM WHICH A FOUND 1/2" IRON PIPE TAGGED L.S. 2989 AT THE NORTHEASTERLY CORNER OF PARCEL TWO IN SAID DEED BEARS S 58° 05' 20" W 1261.77 FEET; THENCE N 87° 59' 40" E 1222.62 FEET TO THE TRUE POINT OF BEGINNING; THENCE ALONG AN EXISTING WATERLINE S 50° 10' 05" E 540.39 FEET; THENCE S 04° 21' 56" E 59.07 FEET TO THE TERMINUS OF THE CENTERLINE DESCRIBED HEREIN.

THE SIDELINES OF SAID STRIP ARE TO BE PROLONGED OR SHORTENED TO TERMINATE NORTHWESTERLY IN LINE WHICH BEARS N 87°53'40" E AND S 87° 53' 40" W FROM THE TRUE POINT OF BEGINNING AND SOUTHEASTERLY IN A LINE WHICH BEARS N 39° 25' 40" E AND S 39° 25' 40" W FROM THE TERMINUS OF THE LINE DESCRIBED ABOVE.

PARCEL SEVEN

AN EASEMENT FOR ROAD PURPOSES OVER THE LANDS OF RAFANELLI, AS DESCRIBED IN THE DEED RECORDED 1/4/99 UNDER DOCUMENT NO. 99-0000557, SONOMA COUNTY RECORDS.

PARCEL EIGHT

AN EASEMENT FOR ROAD PURPOSES OVER THE LANDS OF ZIMMERLIN AS DESCRIBED IN THE DEED RECORDED 1/4/99 UNDER DOCUMENT NO. 99-0000558, SONOMA COUNTY RECORDS.

# FINANCIAL TITLE COMPANY

## LENDER'S ESCROW INSTRUCTIONS

TO: Financial Title Company　　　　　　　　　　　　DATE: November 20, 2007
Nancy Clough
235 Healdsburg Ave. Ste 201
Healdsburg, CA 95448
Phone No.: (707) 431-9700　　Fax No.: (707) 431-9710

RE: Escrow Number: 10014305-663-NC1
Property Address: 4175 West Dry Creek Road
Healdsburg, CA 95448

I/We hand you herewith:

- ☑ Check in the amount of $1,000,000.00
- ☑ Approved copy of Note in the amount of $1,000,000.00
- ☑ Approved copy of the Deed of Trust securing the above note.
- ☑ Request for Notice of Default
- ☑ Approved copy of Preliminary Report.
- ☐ Approved copy of Beneficiary Statement
- ☐

which you are authorized to deliver and/or record when you have received for my account the following:

- ☑ Original Note corresponding to approved copy handed you herewith (Complete interest commencement date as of date escrow closes and first payment date to be thirty days from close of escrow).
- ☑ Original recorded Deed of Trust securing the above (to follow direct from the County Recorder's Office after recordation)
- ☑ Insurance coverage naming the undersigned as **second mortgagee** Lender's Loss Payable
- ☑ Standard coverage CLTA Lender's policy of title insurance naming the undersigned as insureds with a liability of $1,000,000.00 covering the property described in the preliminary title report no. **10014305-663-NC1**, issued by Financial Title Company, dated **November 13, 2007**

SAID POLICY TO SHOW TITLE VESTED IN TRUSTORS OF ABOVE MENTIONED DEED OF TRUST, SUBJECT TO:

1. Printed exceptions and conditions and stipulations in said policy.
2. ☐ All ☑ 2ND Half ☐ Paid　General and Special Taxes for the fiscal year 2007/2008, a lien payable, but not yet due
3. Assessments and/or bonds not delinquent.
4. Exceptions numbered **2, and 4 through 22** as shown in your preliminary report referenced above.

---

These instructions shall remain in full force and effect until rescinded in writing. Incorporated herein and made a part hereof by reference are the "General Provisions" and any additional instructions attached hereto.

### Additional Instructions

NEW FINANCING BY SELLER: Note and Deed of Trust to be prepared by Escrow Holder on your standard form, for signature of the parties, bearing terms as follows:

Promissory Note in the amount of $1,000,000.00 executed by Buyer in favor of Seller, payable in one year from the date of close of escrow including interest from date of close of escrow at the rate of 12.00% per annum. Payment in full due one year from date of close of escrow when all unpaid principal and accrued interest shall be due and payable. Escrow Holder is authorized to insert interest commencement date and the maturity date as required at closing, over signature of the parties, without further instructions from them.

Financial Title Company is specifically directed to follow these instructions only and has no responsibility to follow the terms of any prior agreements entered into between the parties hereto. It is agreed and understood that these Escrow Instructions shall be the whole and only agreement between the parties with regard to the instructions to, and obligations of, Financial Title Company, and shall supercede and cancel any prior instructions. The undersigned parties jointly and severally agree to hold Financial Title Company harmless from and against any and all damages or liability, therefore, loss, costs, charges, attorneys' fees or other expenses which Financial Title Company shall or may at any time suffer, sustain, or incur by reason of or in consequence of complying with the foregoing instructions.

Although time is of the essence in these instructions, they shall be effective until revoked by written demand and authorization satisfactory to you, or as defined in paragraph #10 of these General Provisions.

---

235 Healdsburg Ave. Ste 201　Healdsburg, CA 95448　●　(707) 431-9700　●　Fax (707) 431-9710

Prepared by: NC1

# FINANCIAL TITLE COMPANY

THE PARTIES UNDERSTAND AND ACKNOWLEDGE:

## GENERAL PROVISIONS

1. **NOTE: THE FOLLOWING TWO SUBPARAGRAPHS ARE SPECIFIC TO THE CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS.**

   Additionally, the following two subparagraphs alter Escrow Agent's responsibilities as set forth in paragraphs 14 and 25 of the California Association of Realtors (CAR) form Residential Purchase Agreement and Joint Escrow Instructions:

   (i) Paragraph #14(A) (B) (C) and (D), of the Residential Purchase Agreement and Joint Escrow Instructions shall not be of any concern to Escrow Agent, except where said paragraph is referenced in other areas of the Residential Purchase Agreement and Joint Escrow Instructions as to time periods. Escrow Agent's only duties, as to any other matters contained in Paragraph #14(A) (B) (C) and (D) of the Residential Purchase Agreement and Joint Escrow Instructions, shall be to receive and/or deliver any documents, reports, etc., which may be handed to Escrow Agent for delivery to either party through escrow and to notify parties upon Escrow Agent's receipt of any approvals or disapprovals.

   (ii) Paragraph #25 of the Residential Purchase Agreement and Joint Escrow Instructions shall not be of any concern to Escrow Agent, unless the parties to the escrow specifically notify Escrow Agent otherwise in a separate escrow instruction.

2. **Deposit of Funds & Disbursements**
   All funds received in this escrow shall be deposited in a non-interest bearing account in one or more of your general escrow trust accounts with any financial institution doing business in the State of California and may be transferred to any other general escrow account or accounts elected by Escrow Agent. In accordance with the Notice of Opportunity to Earn Interest, received as part of the Preliminary Report (if applicable), you may choose to have your funds placed into an interest bearing account. In order to do so, you must complete said Notice of Opportunity to Earn Interest and W-9 Form and return to your Escrow Agent. You will incur charges for the administration of the account. Fees that will be charged by Financial Title Company are as follows:
   - Funds Deposited in the Title Company's depository bank $50.00
   - Funds Deposited into the bank of your choice $125.00
   
   Said fees will be charged regardless of the condition and/or close of the escrow. You are authorized not to close escrow. All disbursements shall be made, in U.S. currency only, either by your check or other instrument as per your instructions. Financial Title Company shall not be or disburse until good funds as provided for in California Insurance Code Section 12413.1 have been confirmed in escrow. Delays including will occur if funding is by other responsible for any delay in closing if funds received by escrow are not available for immediate withdrawal. Delays including will occur if funding is by other than bank wire, cashier checks or similar type items payable through a California Bank. In order to avoid unnecessary delays of two to seven days, or more, please use wire transfers, cashier's checks or certified checks whenever possible. The amounts wherein funds are deposited and disbursed are insured under the specifications and regulations of the Federal Depositors Insurance Corporation (FDIC). You are not responsible for these deposits in the event of bank failure, nor will you provide any additional insurance on said deposits. You shall have no obligation to account for the value of any escrow-related accounting services and incidental benefits that may be provided to the company by any depository bank.

3. Financial Title Company conducts escrow business under License 6370 to act as an underwritten title company issued by the State of California Department of Insurance.

4. **Prorations**
   Unless otherwise specified in writing, all prorations and/or adjustments are to be made as of close of escrow on the basis of a 30-day month. As used herein, the expression, "C.O.E." is defined as "Close of Escrow." "H.O. Dues," as used herein, refers to any homeowners association or similar body which levies monthly or periodic assessments or dues for common area maintenance or similar matters. You are authorized to insert the actual date of recording in all notes as to commencement of interest and due date of first payment.

5. **Sufficiency, Validity, Authority, etc. of Documents**
   Escrow Agent shall not be responsible or have any liability with respect to the sufficiency or correctness as to form, manner of execution, or validity of any document deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Agent's duties hereunder shall be limited to the proper handling and disbursement of funds deposited in this escrow and the proper safekeeping and delivery of such documents received by Escrow Agent in accordance with the written instructions given to Escrow Agent in this escrow in which all parties have concurred.

6. **Recordation of Instruments**
   You are authorized to record any documents delivered through this escrow, recording of which is necessary or proper in the issuance of the requested policy of title insurance.

7. **Authorization to Execute Assignment of Insurance Policies**
   You may execute on behalf of the parties herein, assignments of interest in any insurance policies, which are part of this escrow, and forward them upon close of escrow to the agent. With respect to fire insurance policies you shall be fully protected in assuming that such policy is in force and that the necessary premium therefore has been paid. In all acts in this escrow relating to insurance, including adjustments, if any, you shall be fully protected in assuming that each policy is in force and that the necessary premium therefore has been paid.

8. **Authorization to Furnish Copies**
   You may furnish a copy of these Instructions, amendments thereto, closing statements and/or any other documents to any real estate broker and/or lender involved in this transaction upon request of such lenders or brokers. Delivery of said documents can be sent via delivery, U.S. postal mail, overnight mail, facsimile or electronic. All documents and funds due the parties to this escrow will be sent by Escrow Agent via regular mail to said parties at the addresses provided to Escrow Agent, unless otherwise instructed.

9. **Personal Property Taxes**
   No examination or insurance as to the amount of payment of personal property taxes is required unless specifically requested.

10. **Right of Cancellation**
    In the event this escrow is cancelled, the parties hereto agree to pay Escrow Agent its cancellation fee for work performed, and to pay all expenses incurred by Escrow Agent on behalf of any party to this escrow. If a demand to cancel this escrow is submitted to Escrow Agent after the closing date set forth in these Instructions, Escrow Agent shall send copies of such demand to all other parties. Alternatively, any principal may deliver to you a notice of cancellation executed by that principal. Upon receipt of such notice, you shall deliver a copy of such notice to each of the other principals at the address in this escrow. UNLESS WRITTEN OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITH TEN (10) DAYS AFTER DATE OF SUCH MAILING, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES.

    If a written objection is received by Escrow Holder, Escrow Holder is authorized, at its option, to hold all funds and documents in escrow (subject to the funds held fee) and to take no other action until otherwise directed by either the parties' mutual written instructions or a final order of a court of competent jurisdiction. If no action is taken on this escrow within 6 months after the closing date specified in the escrow instructions, Escrow Holder's obligations shall, at its option, terminate. Upon termination of this escrow, the parties shall pay all fees, charges and reimbursements due to Escrow Holder and all documents and remaining funds held in escrow shall be returned to the parties depositing same.

11. **Action in Interpleader**

The parties expressly agree that you, as escrow holder, have the absolute right at your election to file an action in interpleader requiring the parties to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the parties jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in the interpleader action. Upon the filing of the action, you shall be fully released from the obligations to further perform any duties otherwise imposed by the terms of this escrow.

12. **Termination of Agency Obligations**

If there is no action taken on this escrow within six months after the time limit date set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies, or other items held by you shall be returned to the parties depositing same. This shall not limit your right to withdraw as escrow agent from this transaction at any time. In the event of termination of your agency obligation, the parties shall pay your fees, charges and any expenses incurred, which shall be deducted from any and all deposits made to escrow.

13. **Conflicting Instructions**

No notice, demand, or change of these instructions shall be of any effect unless given in writing. Should you before or after close of escrow receive or become aware of any conflicting demands or claims with respect to this escrow of the rights of any of the parties hereto, or any money or property deposited herein or affected hereby, you shall have the right to discontinue any or all further acts on your part until such conflict is resolved to your satisfaction, and you shall have the further right to commence or defend any action or proceedings for the determination of the conflict as provided in paragraphs 10 and 11 of these General Provisions. The parties hereto jointly and severally agree to pay all costs, damages, judgments and expenses, including reasonable attorney's fees, suffered or incurred by you in connection with, or arising out of this escrow, including, but without limiting the generality of the foregoing, a suit interpleader brought by you. In the event you file a suit in interpleader you shall be fully released and discharged from all obligations imposed upon you in this escrow.

14. **Contingency Periods**

Escrow Holder shall not be responsible for monitoring contingency time periods between the parties. The parties shall execute such documents as may be requested by Escrow Holder to confirm the status of any such periods.

15. **Reports**

As an accommodation, Escrow Holder may agree to transmit orders for inspection, termite, disclosure and other reports if requested, in writing or orally, by the parties or their agents. Escrow Holder shall deliver copies of any such reports as directed. Escrow Holder is not responsible for the reviewing such reports or advising the parties of the content of same.

16. **Information From Affiliated Companies**

Escrow Holder may provide the parties' information to and from its affiliates in connection solely to facilitate the closing of this transaction.

17. **Funds Retained in Escrow**

If for any reason, funds are retained or remain in escrow more than 90 days after closing date, you are to deduct therefrom a reasonable monthly charge as custodian thereof of not less than $25.00 per month. Instruments that are not negotiated within six months are considered stale dated and are considered to be held in escrow and are subject to the fees described above to be assessed from the date of the instrument.

18. **Usury**

You are not to be concerned with any question of usury in any loan or encumbrance involved in the processing of this escrow and you are hereby released of any responsibility or liability therefore. Furthermore, notwithstanding the Note has been executed, you are authorized to insert the actual date of recording in all Notes as to the commencement of interest and due date of the first payment, unless otherwise instructed.

19. **Indemnity for Attorneys Fees and Costs**

In the event suit is brought by any party to this escrow, including the title company or any other party, as against each other or others, including the title company, claiming any right they may have as against each other or against the title company, then in that event, the parties hereto agree to reimburse, indemnify and hold harmless Escrow Holder from and against any loss, attorney's fees, expenses and costs incurred by it.

20. **Destruction of Documents**

You are authorized to destroy or otherwise dispose of any and all documents, papers, instructions, correspondence and other material pertaining to this escrow at the expiration of five years from the close of escrow or cancellation thereof, without liability and without further notice to parties to the transaction.

21. **Tax Reporting, Withholding and Disclosure**

The parties are advised to seek independent advice concerning the tax consequences of this transaction, including but not limited to, their withholding, reporting and disclosure obligations. Escrow Holder does not provide tax or legal advice and the parties agree to hold Escrow Holder harmless from any loss or damage that the parties may incur as a result of their failure to comply with federal and/or state tax laws. *WITHHOLDING OBLIGATIONS ARE THE EXCLUSIVE OBLIGATIONS OF THE PARTIES. ESCROW HOLDER IS NOT RESPONSIBLE TO PERFORM THESE OBLIGATIONS UNLESS ESCROW HOLDER AGREES IN WRITING.*

A. **Taxpayer Identification Number Reporting**

Federal law requires Escrow Holder to report seller's social security number or tax identification number (both numbers are hereafter referred to as the "TIN"), forwarding address, and the gross sales price to the Internal Revenue Service ("IRS"). To comply with the USA PATRIOT Act, certain taxpayer identification information (including, but not limited to, the TIN) may be required by Escrow Holder from certain persons or entities involved (directly or indirectly) in the transaction prior to closing.

Escrow cannot be closed nor any documents recorded until the information is provided and certified as to its accuracy to Escrow Holder. The parties agree to promptly obtain and provide such information as requested by Escrow Holder.

B. **State Withholding & Reporting**

Under California law (Rev & Tax Code §18662 and §18668), a buyer may be required to withhold and deliver to the Franchise Tax Board (FTB) an amount equal to 3.33% of the sales price, or an alternative withholding amount that is specified in a written certificate executed by the transferor, in the case of disposition of California real property interest ("Real Property") by either 1) a seller who is an individual, trust or estate or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of seller, OR 2) a corporate seller that has no permanent place of business in California immediately after the transfer of title to the Real Property. Buyer may be subject to a penalty (equal to the greater of 10% of the amount required to be withheld or $500.00 for failing to withhold and transmit the funds to FTB in the time required by law. Buyer is not required to withhold any amount and will not subject to penalty for failure to withhold if: a) the sales price of the Real Property does not exceed $100,000; b) the seller executes a written certificate under penalty of perjury certifying that the seller is a corporation with a permanent place of business in California; OR c) the seller, who is an individual, trust, estate or corporation without a permanent place of business in California, executes a written certificate under penalty of perjury certifying one of the following: (i) the Real Property was the seller's or decedent's principal residence (as defined in IRC §121); (ii) Real Property being conveyed was last used in the seller as seller's principal residence within the meaning of IRC §121 (even if the seller did not meet the two out of the last five years requirement or one of the special circumstances in IRC §121); (iii) the Real Property is or will be exchanged for property of like-kind (as defined in IRC §1031) and that the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain California income tax purposes under IRC §1031; (iv) the Real Property has been compulsorily or involuntarily converted (as defined in IRC §1033) and the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under IRC §1033; or (v) the Real Property sale will result in a loss (or net gain not required to be recognized) for California income tax purposes. Seller is subject to penalties for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding laws.

Contact FTB: For additional information regarding California withholding, contact the Franchise Tax Board at (toll free) 888-792-4900, by e-mail: WSCS.OPN@ftb.ca.gov; or visit their website at www.ftb.ca.gov.

C. **Federal Withholding & Reporting**

Certain federal reporting and withholding requirements exist for real estate transactions where the seller (transferor) is a non-resident alien, a non-domestic corporation, partnership, or limited liability company, or a domestic corporation, partnership or limited liability company controlled by non-residents; or non-resident corporations, partnerships or limited liability companies.

**D. Taxpayer Identification Disclosure**

Federal and state laws require that certain forms include a party's TIN and that such forms or copies of the forms be provided to the other party and to the applicable governmental authorities. Parties to a real estate transaction involving seller-provided financing are required to furnish, disclose, and include the other party's TIN in their tax returns. Escrow Holder is authorized to release a party's TIN and copies of statutory forms to the other party and to the applicable governmental authorities in the foregoing circumstances. The parties agree to hold Escrow Holder harmless against any loss, costs, or judgments incurred and/or awarded because of the release of their TIN as authorized herein.

**22. Supplemental Taxes**

Supplemental tax bills, when issued and posted, may not be immediately available; therefore, there may be a gap in time where the bill may be posted but we would not have knowledge of it. Therefore, in the event a supplemental tax bill is issued by the County Tax Collector after the date of the above mentioned preliminary report or after the close of escrow and transfer of title, the undersigned parties agree to handle any adjustment which might result from such supplemental tax bill directly between themselves.

**23. Exchanges**

In the event this transaction is an exchange or part of an exchange, the parties acknowledge the escrow holder has made no representations whatsoever regarding the sufficiency or effect of this transaction in relation to applicable federal and state tax laws. It is further acknowledged by the parties that they have been advised by escrow holder to seek the counsel of their own tax attorney or certified public accountant for the determination of any tax consequences of this exchange.

The undersigned fully indemnify and hold escrow holder harmless from any loss or damage which the parties may sustain in the event this transaction fails to qualify for any special tax treatment.

**24. Amendment to Escrow Instructions and Counterpart Approval**

Any amendment or supplement to these escrow instructions, amendments and supplements must be in writing. Collectively, these escrow instructions constitute the entire escrow between the escrow holder and the parties. These escrow instructions, amendments and supplements may be executed in one or more counterparts each of which independently shall have the same effect as if it were the original, and all of which taken together shall constitute one and the same instructions, provided said documents have been delivered to Escrow Holder. Should said documents be delivered by facsimile or electronically parties hereto instruct Escrow Holder, at Escrow Holders option, to rely upon such instructions as if they were original.

**25. Fax/Telecopy Instructions**

In the event Buyer(s), Seller(s) or other Parties to the Escrow utilize "facsimile" transmitted signed documents, Buyer(s) and Seller(s) hereby agree to accept, and instructs the Escrow Holder to rely upon such documents bearing the original signatures. Buyer(s) and Seller(s) hereby acknowledge and agree to provide to Escrow Holder the original documents (that have been sent via FAX) within 72 hours of Transmission. Buyer(s) and Seller(s) further acknowledge and agree that documents necessary for recording by the County Recorder must be original signatures, and therefore, upon receipt of the original documents to record can delay the close of escrow.

**26. Agreement of Co-Operation (Unjust Enrichment)**

In the event that any party to this escrow received funds or is credited with funds that they are not entitled to, for whatever reason, they agree, upon written demand, to return said funds to the proper party entitled or to the escrow for disbursement. Escrow Holder has the option to file for a Small Claims action, in a judicial district convenient to Financial Title Company. The services of a Collection Agency may be initiated, if Escrow Holder is not in receipt of the requested funds within 15 days of a written demand. Any consequences concerning credit reporting shall not be the responsibility of liability of Financial Title Company. In the event that suit is brought to enforce the return of said funds, the parties agree to reimburse the prevailing party their reasonable attorney fees.

**27. Escrow Responsibility**

We understand that Escrow is acting under this Agreement as a depository only and its sole responsibility shall be to comply with the written instructions given to and accepted by Escrow under this Agreement. Your duties under this Agreement shall be limited to the safekeeping of money, instruments, or other documents received by you as the Escrow Agent, and for the disposition of the money, instruments or other documents received by you in accordance with the instructions contained in this Agreement. Escrow shall have no duty, obligation or responsibility to undertake any of the following actions: (a) to inquire into the sufficiency, correctness, genuineness, form, substance, manner of execution, validity or enforceability of any document; (b) to inform either Seller or Buyer of any facts which Escrow may have acquired outside the transaction between Seller and Buyer; (c) for any loss suffered by either Seller or Buyer attributed to defects in the Title to the Real Property except for a loss caused by Escrow's failure to obtain the required Title insurance or Title coverage.

In the event that Escrow Agent is requested or instructed to pay credit card accounts, collection accounts, or any debt, other than a lien against the subject property, it is understood that said payments are made as an accommodation only, and Escrow Agent is relieved from any liability or responsibility for late fees or any other costs, other than the amount shown on the estimated settlement statement. Borrower is responsible for providing Escrow Agent with correct account number, address and complete name of creditor. All payments will be sent directly to the creditor at the close of escrow, via U.S. Postal Service. Escrow Agent is not to be concerned with verification of any information provided by Borrower, including but not limited to balance due or receipt of payment. Should Escrow Agent receive creditor information from lender and as a condition of funding, the parties to this escrow understand that Borrower remains responsible for payments and monitoring said credit accounts. Any disputes as to balance due, terms and/or address of creditor shall be a matter conducted between the Borrower, creditor and lender directly.

The parties herein jointly and severally agree to hold Financial Title Company harmless from and against all damages or liability, therefore, loss, costs, charges, attorneys' fees or other expenses which Financial Title Company shall or may at any time suffer, sustain or incur by reason of or in consequence of complying with the foregoing instructions. It is recommended that the parties herein seek independent legal counsel and other professional advice as to all matters concerning this transaction.

**28. Seller's Disclosure**

The undersigned Seller(s) hereby certifies that all liens, judgments deeds of trust, taxes, and other obligations have been disclosed to Financial Title Company, and that NO additional items or obligations exist against me/us, except those disclosed on the preliminary report referenced above, which has been acknowledged by my/our initial(s) or signature(s).

The undersigned hereby certifies that NO construction, alteration, addition to, or repair of a building or structure is in process or has recently been completed.

Therefore, the undersigned agrees to hold harmless and indemnify Financial Title Company and its underwriter against all loss, damage, attorney's fees and other costs and charges which Financial Title Company or it's underwriter may sustain in consequence of having issued such policy or policies of Title Insurance, and not having taken exception to an item which should have been disclosed but for whatever reason was not.

**29. Buyer's/Borrower's Disclosure**

The undersigned Buyer(s)/Borrower(s) hereby certifies that all liens, judgments, taxes and other obligations have been disclosed to Financial Title Company, and that there are NO additional items that exist against me/us.

The undersigned hereby certifies that NO construction, alteration, addition to, or repair of a building or structure is in process or has recently been completed.

Therefore, the undersigned agrees to hold harmless and indemnify Financial Title Company and its underwriter against all loss, damage, attorney's fees and other costs and charges which Financial Title Company or its underwriter may sustain in consequence of having issued such policy or policies of Title Insurance, and not having taken exception to an item which should have been disclosed but for whatever reason, was not.

**30. Estimated Settlement Statement**

Buyer and Seller hand you herewith an estimated settlement statement which has been read and approved. You are authorized and instructed to make deductions, adjustments and disbursements in accordance with said estimated settlement statement. All amounts are estimated and may be adjusted depending upon the date of close of escrow. A Final Closing Statement, and/or HUD-1, will be issued at the close of escrow. You are authorized to use my current and/or forwarding address on the HUD-1, or any other regulatory document, unless otherwise directed by the principals herein.

**31. Copy Quality**

Any copies provided to us from the County Recorder are the best available copies and Financial Title Company is relieved from any liability or responsibility for the clarity of the copies.

32. **Preliminary Change of Ownership Report (PCOR)**

Buyer(s) will hand you before close of escrow a completed "Preliminary Change of Ownership" Report which you are hereby instructed to file accompanied by the Grant Deed with the County Recorder; or in the absence or rejection thereof, you will pay from Buyer's funds an additional $20.00 if required by the County Recorder. It is understood that Escrow does not have sufficient information to complete this form and will not be required to furnish information therefore. In the event the Preliminary Change of Ownership Report is rejected, Buyers understand that they will be required to file a Change of Ownership Report that should be mailed to them with the recorded Grant Deed from the County Recorder's Office, after close of escrow. Buyers are aware that by law this requirement must be met within 45 days from recordation of their Grant Deed or they may be assessed additional penalties.

33. **Failure to Close Timely**

If the conditions for closing this escrow have not occurred at the time set forth herein for closing, Escrow Agent is nevertheless to continue to act hereunder and to close this escrow as soon thereafter as such conditions (except as to time) shall have been met, unless any party shall have made a written demand on Escrow Agent for cancellation of this escrow and/or for the return of any funds and/or documents deposited by such party.

34. **No Duty to Notify as to Subsequent Transactions**

Escrow Agent shall have no duty or responsibility to notify any party to this escrow of any sale, resale, loan, exchange or other transaction involving the property which is the subject of this escrow or any profit realized by any person or entity in connection therewith, notwithstanding that Escrow Agent may act as escrow holder for such transaction(s) in this or another escrow(s).

35. **Escheat to the State of California**

If for any reason, funds retained or remain in escrow for more than 3 years after the last contact date with the party(ies) in which funds were disbursed or instructed to be released to, and if the party(ies) cannot be located, or if there is a dispute regarding the disbursement of the funds, you are to deduct your custodian fees as provided for in paragraph 17 of these General Provisions and escheat the remaining funds to the State Controller, as mandated by the State of California. If funds are disputed, meaning release is not mutually agreed upon and/or there is no final court order to whom the funds should be released, then you shall escheat the remaining funds to the State Controller as "disputed funds". In the event the party(ies) last known address is outside of California you are to escheat the funds either to the State of California, as apart, pursuant to the list of Reciprocal States for Unclaimed Properties or by remitting the funds pursuant to the guidelines and escheatment periods of the State Controller where the party(ies) reside(s), as mandated by said State.

36. **Privacy Policy**
    **We Are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, you have provided or will provide us with certain information. We understand that you may be concerned about what we will do with such information — particularly any personal or financial information. We agree that you have a right to know how we will utilize personal information you provide to us.

**Applicability**

This privacy policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

**Types of Information**

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, or affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**

The information you provide us is for our own legitimate business purposes and not for the benefit of any affiliated or nonaffiliated party. Therefore, we will not release your information to affiliated and nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities that need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with the Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

37. **Application of Payoff Funds**

The parties herein understand that interest continues to accrue against existing liens until such time as the beneficiary is in receipt of the payoff funds. Borrower remains responsible for making payments, when due, to the Beneficiary. Should a check or wire be deemed unacceptable by lenders, creditors, lien holders or beneficiaries of Deeds of Trust, you are authorized to act on our behalf in communicating with the lenders, in every way, including but not limited to requesting the funds, as well as any balance in an impound account, be applied towards the balance due.

Furthermore, I/We authorize and instruct the creditors contacted by Financial Title Company to release any and all information concerning our accounts in order for Financial Title Company to pay amounts instructed by the new lender funding this transaction or as shown on the estimated or closing statement issued by Financial Title Company in connection with these general provisions. Creditors are to accept these instructions as my/our full authorization for the release of said information with no further authorization from the undersigned.

Financial Title Company is specifically directed to follow these Instructions only and has no responsibility to follow the terms of any prior agreements entered into between the parties herein. It is agreed and understood that these Escrow Instructions shall be the whole and only agreement between the parties with regard to the instructions to, and obligations of, Financial Title Company, and shall supersede and cancel any prior instructions. The undersigned parties jointly and severally agree to hold Financial Title Company harmless from and against any and all damages or liability, therefore, loss, costs, charges, attorneys' fees or other expenses which Financial Title Company shall or may at any time suffer, sustain or incur by reason of or in consequence of complying with the foregoing instructions.

Although time is of the essence in these instructions, they shall be effective until revoked by written demand and authorization satisfactory to you, or as defined in paragraph #10 of these General Provisions.

genprov (rev. 031198)

**Disbursement of Funds:**

The undersigned hereby instructs Financial Title Company to disburse their proceeds as follows:
- ☐ Hold check for pick up at your Financial Title Company office in/at _____
- ☐ Authorize check to be picked up by:
  - Name: _____
- ☐ Call when check is ready for pickup, phone # _____, contact _____
- ☐ Mail check to:
  - Name: _____
  - Address: _____
- ☐ Transfer proceeds to:
  - Escrow No. _____
  - Title company _____
  - Address _____
- ☐ "Wire" direct to our account - see attached sheet for further instructions (a $25.00 wiring fee will be collected in this escrow)
- ☐ Other - see attached sheet for further instructions or: _____

The proceeds will be disbursed in the form of one check payable to the order of <u>ALL</u> Sellers/Buyers/Borrowers (whichever is applicable) unless Escrow Holder is provided with written instructions from all Buyers to do otherwise. Such checks require the personal endorsement of all payees to be negotiable. *Unless otherwise directed in these instructions, Escrow Holder is authorized to mail any proceeds/refund check(s) to the Seller/Buyer's/Borrower's (whichever is applicable) at the address provided Escrow holder herein.*

Property address is: 4175 West Dry Creek Road, Healdsburg, CA 95448

"**IMPORTANT:** California Law requires all funds deposited to close must be presented in the form of a Cashier's Check, Bank Check, or Wire Transfer, payable to Financial Title Company."

David Kirk

By: _____  11-20-2007
                    Date

Print Name/Title: DAVID KIRK

Forwarding Address: San Francisco, CA 94107

Contact Info:  Day: _____  Evening: _____  Cell./Pager: _____
E-mail address: _____

Received on: _____  Financial Title Company: By: _____

FIDELITY BROKERAGE SERVICES LLC
P.O. BOX 145421
CINCINNATI, OH 45250-5421



DAVID KIRK
LEIGH C KIRK
855 FOLSOM ST APT 734
SAN FRANCISCO CA 94107-1183

**Transaction Confirmation**

Fidelity Account Number:
Transaction Reference Number:       37802007

We are writing to confirm a recent bank wire disbursement from your account. Please review this information carefully and if you have any questions or believe that this transaction was processed in error, please call 800-544-6666.

           Date of Transaction: November 21, 2007
             Bank Wire Amount: $1,000,000.00
                    Bank Name: CENTENNIAL BANK
          Bank Routing Number: XXXXX
                 For Credit to: FINANCIAL TITLE COMPANY
          Bank Account Number: XXXXXXXXXX